[No. 1510.].

EUSTACE JACKSON *v.* THE STATE.

1. PRACTICE—CHARGE OF THE COURT.—A defendant in a felony trial is entitled to a distinct and affirmative presentation of the issues which arise upon the evidence, in order to prevent the jury from ignoring his defenses, and to conduct them to a proper verdict, if they find his evidence to be true. However improbable his evidence may appear, it is his right to have the jury determine its truth or falsity in the first instance, without being forestalled by the court.

2. SAME.—SELF-DEFENSE being an issue clearly presented by the evidence in this cause, the trial court should have embodied in its charge the law of the subject.

3. SAME—PRACTICE IN THIS COURT.—In a murder trial wherein the evidence raised the issue of self-defense, the trial court failed to charge the jury with respect to that issue. The defendant neither excepted to the charge as given at the time, nor requested special charges appropriate to the question, but in his motion for new trial assigned the omission as error. *Held*, that under such circumstances this court is called upon to determine, first, Did the court below err in omitting to charge the jury upon the issue of self-defense? Second, if such omission was error, was it such error as was calculated to injure the rights of the defendant? See a state of case wherein it was held that the omission was error, and such error as was calculated to injure the rights of the defendant.

APPEAL from the District Court of Refugio. Tried below before the Hon. H. C. Pleasants.

The indictment charged the appellant with the murder of Henry Curry, in Refugio county, Texas, on the twentieth day of July, 1883. The conviction was for murder in the second degree, and the punishment was affixed at a term of five years in the penitentiary.

The opinion embodies a very clear and full synopsis of the evidence.

The motion for a new trial assailed the charge of the court as given, and the action of the court in refusing instructions asked, and denounced the verdict as unsupported by the evidence.

*Woodruff & Merriwether* filed an able brief and argument for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. Substantially the facts of this case, as presented by the record, are as follows:

1. Henry Curry, the deceased, was killed on the twentieth of July, 1883, in Refugio county. His death was produced by two wounds in the back, inflicted by shots from a pistol. He was also stabbed with a knife in several places.

2. Eustace Jackson, the defendant, inflicted the wounds which produced the death of Curry, and also the wounds with the knife.

3. Jackson and Curry were alone when the homicide was committed. No other person witnessed the encounter, which resulted in the death of Curry.

4. Curry bore ill-will toward the defendant Jackson. Three or four weeks before he was killed he tried to get Jackson to fight him, and also about that time said that he was going to kill Jackson; that he had never lived in a State where he had not killed his man. This threat was communicated to Jackson prior to the homicide.

5. At the time of the homicide both the defendant and the deceased were in the employ of one West, who testifies in the case, and on the day of the homicide they had been engaged during the day in cutting hay, some miles distant from where they resided.

6. On the evening of that day the deceased requested defendant to get some provisions and take home to his, the deceased's, family, saying that he, deceased, would remain on the hay grounds that night and take care of the teams. Defendant got the provisions and carried and left them at deceased's house, as requested, and then went over to the witness West's house, which was not far away. It was the understanding that deceased was to remain at the hay grounds that night and take care of the teams, and that defendant, after taking the provisions to deceased's house, and repairing a break in his, the defendant's, fence, would return to the hay grounds that night.

7. While defendant was at West's house, deceased arrived at home from the hay grounds and got his pistol, powder, caps and shot, and started off again, being on horseback. Before leaving home he said that either the defendant or himself would have to die that night.

8. Deceased, after leaving home, went to defendant's house and called for defendant, but defendant not being there, he galloped on by West's house, in the direction of the town of

Refugio, and also in the direction of the hay grounds. As he passed West's house, the defendant called to him to stop, and the witness West, who was present with the defendant, testified that the deceased did not stop, but replied to defendant, cursing him, and telling him that he would blow his brains out before morning. Upon this point, however, there is a conflict of testimony. Woods, a witness for the State, testifies that Curry made no reply when the defendant called to him to stop, and that the defendant then cursed Curry, and told him he would kill him before morning.

9. Shortly, and perhaps immediately, after deceased passed West's house, defendant mounted his horse and rode off in the direction the deceased had gone. There is some conflict in the testimony of the witnesses West and Woods, as to the time and manner of defendant's departure. West states that the defendant left, saying he would return to the hay grounds. In returning to the hay grounds he would have to travel the same road that deceased was traveling when he passed West's house.

10. Some fifteen minutes after defendant left West's house, shots were heard in the direction of the place where the homicide occurred, which was about one mile and a half from West's house. West testified that he heard three or four shots. Woods testified that he heard six or seven shots. Both these witnesses state that the first shot did not sound as loud as the others, and that the others sounded alike. Deceased's pistol was a single barrel, muzzle loading, dragoon holster pistol, while the defendant's pistol is not described in the record.

11. Soon after the shots were heard (West says in about fifteen minutes, Woods says in about half an hour), defendant returned to West's and said he had killed Curry; that Curry had run on to him and told him to stop, and had then fired the first shot at him with a pistol; that he then shot Curry and stabbed him with a knife; that he had knocked the knife out of Curry's hand with his pistol. when they both went down off their horses for the knife; that he got it first and stabbed him, and wiped the blood from the knife and threw it down near the body.

12. About twenty steps from the dead body deceased's pistol was found, and it was unloaded, and presented the appearance of having been recently discharged. A butcher knife belonging to deceased was also found near the dead body.

13. In describing the indications on the ground near the dead body, a witness says: "Discovered some tracks made by two

horses going in a run in the same direction and toward the town of Refugio. The horses were running in a zig-zag, or unsteady manner, which may have been caused by the riders having hold of, or scuffling with, each other. Near where the body lay the ground showed where the deceased had fallen off his horse and slid along the ground a little piece; the imprint was there, and deceased had dirt on his clothes, in his hair and on his face."

Upon this state of the facts the court charged the jury the law of murder in the first and second degrees, and of manslaughter, but gave no charge as to justifiable homicide in self-defense. No exceptions were made to the charge of the court, and no charges were requested by the defendant; but in his motion for a new trial the defendant complains of the charge of the court in several respects, and particularly because it does not contain all the law applicable to the evidence, in that it omits to instruct the jury upon the law of justifiable homicide in self-defense.

We are therefore to determine, first, did the court err in omitting to instruct the jury upon the principles of law governing self-defense? Second, if such omission was error, was it calculated to injure the rights of the defendant?

We think both these questions must be answered in the affirmative. While the evidence upon the question of self-defense is conflicting, yet, in our opinion, it fairly presents that issue; and, this being the case, the learned judge should have submitted the issue to the jury, under proper instructions as to the law of self-defense. As has been heretofore said by this court, "The defendant is entitled to a distinct and affirmative presentation of the issues arising upon his evidence, in order that the jury may not be induced to ignore his defenses upon the supposition that the court did not deem them of sufficient importance to justify consideration, and for a further reason that without such presentation the jury are in no condition to make an intelligent selection of the law which should govern them in case they should find that the defendant's evidence was true. It may often happen that the testimony in defense has been fabricated, and that so inartistically as to bear upon its face an air of improbability or actual untruth; but even then the court is not relieved from the duty of considering it in framing its charge, as it is the right of the defendant to have its truth or falsity deter-

mined by the jury, and not by the court, in the first instance." (*Reynolds* v. *The State,* 8 Texas Ct. App., 412.)

If we are correct in our conclusion that the evidence demanded a proper charge upon the law of self-defense, then we are clear in our opinion that the omission to give such a charge was an error calculated to injure the rights of the defendant. Self-defense was, to him, the vital issue in the case. It was his sole defense; and if he could not avail himself of it, he was left without any justification, excuse, or even mitigation for the homicide. In determining this question, it is not for us to pass upon the evidence, and say whether or not it establishes self-defense, and whether or not, in our opinion, the rights of the defendant were in fact injured by the failure of the court to charge upon self-defense. We are only called upon to say whether or not the omission to give such a charge was *calculated* to injure the rights of the defendant; and we think it was. (*Maddox* v. *The State,* 12 Texas Ct. App., 429.)

Other objections are urged against the charge of the court, but we deem them untenable. If the charge had embraced the law of self-defense applicable to that issue as raised by the evidence, we think it would have been unobjectionable; but, because it was defective in this respect, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered November 21, 1883.